Argued and submitted May 3, decision of the Court of Appeals reversed; judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings June 17, 2004

AMERICAN BANKERS INSURANCE COMPANY,
on behalf of Mortgage One, Inc.,
on behalf of Mortgage Broker Security Bond,
*Plaintiffs,*

*v.*

STATE OF OREGON;
Stauber Real Estate Appraisal, Inc.;
Appraisal Company; Hanson Appraisals;
James C. Land Real Estate Appraiser, Inc.;
Reinhart & Associates;
Carl Goschie & Associates;
Nationwide Real Estate Tax Services;
On Line Documents;
Kurt Bender Real Estate Appraiser;
Rager Mountain Appraisals;
and Ang Engineering Group, Inc.,
*Defendants,*

*and*

EXECUTIVE REPORTING SERVICES;
Precision Appraisals; Rice Dersham, Inc.;
Oregon Appraisal & Associates;
Appraisal Express, Inc.;
David Griffith Real Estate Appraiser;
Portland Residential Appraisals;
Bratton Appraisal Group;
Garrow Appraisals;
and Lisa G. Farber & Assoc.,
*Respondents on Review,*

*and*

Robert GRAF
and Sandra Graf,
*Petitioners on Review.*

(CC 0006-05848; CA A115183, SC S50816)

92 P3d 117

Joseph D. McDonald, of Smith & McDonald, LLP, Portland, argued the cause and filed the petition for review for petitioners on review.

No appearance *contra*.

Ryan Kahn, Assistant Attorney General, Salem, filed the brief for *amicus curiae* State of Oregon. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Phil Goldsmith, Law Office of Phil Goldsmith, Portland, filed the brief for *amici curiae* Oregon Trial Lawyers Association and Oregon Consumer League.

BALMER, J.

**BALMER, J.**

In this interpleader action, we are asked to decide who is entitled to assert a claim against a bond posted by a licensed mortgage broker. Robert and Sandra Graf loaned funds to Karl and Linda Keener through an agreement with a mortgage broker, Mortgage One, Inc., Oregon law required Mortgage One to obtain a bond, which American Bankers Insurance Company, Inc. supplied. After the Keeners defaulted on the loan, the Grafs alleged that Mortgage One had made misrepresentations in connection with the loan transaction and sought to recover on the bond. Other individuals and businesses with claims against Mortgage One also sought to recover on the bond. American Bankers filed an interpleader action and deposited the amount of the bond with the trial court so that the court could determine the validity of the competing claims to the funds. Ultimately, the trial court determined that the Grafs could not recover against the bond because they did not belong to the class of parties that the legislature intended to protect through the bonding requirement. The Court of Appeals agreed. *American Bankers Ins. Co. v. State of Oregon*, 188 Or App 606, 72 P3d 666 (2003). We allowed review and now reverse.

The facts relevant to the issue on review are not disputed. Mortgage One was licensed to do business as a mortgage broker in Oregon. The Grafs contend that one of Mortgage One's agents negotiated with the Grafs for a $100,000 loan to a third party, the Keeners. To secure the Keeners' promise to repay the loan, the Keeners provided the Grafs with deeds of trust on residential properties. The Keeners later defaulted on the loan, and the Grafs maintain that as a consequence they have suffered a loss of approximately $200,000.

Mortgage One and American Bankers had entered into an agreement by which American Bankers provided Mortgage One with a bond in the amount of $50,000, as ORS 59.850 requires. As noted, after American Bankers received multiple claims against the bond, American Bankers initiated the present interpleader action and deposited the amount of the bond with the trial court. The total amount of the claims exceeded the amount of the bond.

The Grafs filed a claim for the entire bond, alleging that Mortgage One's agent had induced them to loan their funds through misrepresentations. Executive Reporting Services, Inc., and Precision Appraisals, which had provided credit information and real estate appraisals, respectively, to Mortgage One and had not been paid for their services, also filed claims against the bond.[1] The Grafs, who also had cross-claimed to prevent other parties from recovering any of the bond proceeds, moved for summary judgment, contending that they were the only proper claimants to the bond. Executive Reporting and Precision Appraisals also moved for summary judgment in their favor, and they opposed the Grafs' motion for summary judgment. The trial court concluded that Executive Reporting and Precision Appraisals— but not the Grafs—were proper claimants to the bond.

The Grafs appealed, and the Court of Appeals affirmed in part and reversed in part. The court analyzed the text and context of the Oregon Mortgage Lender Law, ORS 59.840 to 59.980. In particular, the court examined ORS 59.925(2), which provides that an action may be brought against a mortgage broker by "any person who suffers any ascertainable loss of money or property, real or personal, in a * * * mortgage broker transaction * * *." The court concluded that the text and context of ORS 59.925(2) did not provide a definitive answer to the question of which persons or parties are entitled to bring an action under that statute, *American Bankers*, 188 Or App at 611-13, and therefore turned to the legislative history of ORS 59.925 and of the bonding requirement contained in ORS 59.850. Based on that history, the court determined that the legislature intended the bonding requirement to protect consumers—ordinarily, borrowers— who had paid mortgage brokers in advance for such services as appraisals and credit reports that the brokers then had failed to provide. *Id.* at 615. As a result, the Court of Appeals concluded that, as private lenders, the Grafs were not within the class of claimants who validly could claim against the bond. *Id.* The Court of Appeals also concluded that Executive

---

[1] Approximately 20 other businesses with claims against Mortgage One also sought to recover on the bond. Of those, only Executive Reporting and Precision Appraisals pursued their claims in the Court of Appeals. We limit our discussion of the claimants to the Grafs, Executive Reporting, and Precision Appraisals.

Reporting and Precision Appraisals were simply unpaid creditors of the mortgage broker. It followed, the court held, that, like the Grafs, Executive Reporting and Precision Appraisals were not within the group of persons that the legislature had intended to protect by imposing the bonding requirement and, therefore, they also could not claim successfully against the bond. *Id.* The Court of Appeals affirmed the part of the trial court judgment that denied the Grafs' motion for summary judgment and reversed the part of the judgment that granted the summary judgment motions of Executive Reporting and Precision Appraisals.

Only the Grafs sought review in this court. We allowed review to determine who is entitled to make a claim against a mortgage broker's bond. As we will explain below, that inquiry requires us first to determine who, in general, may bring an action against an Oregon licensed mortgage broker under the Oregon Mortgage Lender Law.

■ To answer those questions, we must interpret the statutes that govern the liability of mortgage brokers and that require mortgage brokers to obtain a bond. We begin our statutory inquiry with the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Pursuant to that methodology, we first examine the text and context of the statute, giving words of common usage "their plain, natural, and ordinary meaning." *Id.* at 611. If the legislative intent is clear from the text and context of the statute, then further analysis is unnecessary. *Id.*

We begin with the text of ORS 59.925. ORS 59.925(6) provides that "[a]ny person having a right of action against a mortgage banker or mortgage broker shall under this section have a right of action under the bond or irrevocable letter of credit provided in ORS 59.850." ORS 59.850 requires that an applicant for a mortgage banker or mortgage broker license "file with the [Director of the Department of Consumer and Business Services] a corporate surety bond or irrevocable letter of credit" in an amount of not less than $25,000 but not more than $50,000, with the amount of the bond to be determined by the number of offices that the mortgage banker or mortgage broker operates in the state. ORS

59.850(4), (5). Because of the number of offices that it operated, Mortgage One obtained and filed a surety bond in the amount of $50,000.

Because ORS 59.925(6) plainly states that a person who has a right of action under the bond is a person who has a right of action against a mortgage banker or mortgage broker, we must determine who has a right of action against a mortgage banker or mortgage broker by examining ORS 59.925(1) to (3), which provide:

"(1)   As used in this section, 'mortgage banker transaction' and 'mortgage broker transaction' mean a transaction in which a person, in order to engage in the transaction, is required to be licensed as a mortgage banker or a mortgage broker under ORS 59.840 to 59.980.

"(2)   A mortgage banker or mortgage broker is liable as provided in subsection (3) of this section to any person who suffers any ascertainable loss of money or property, real or personal, in a mortgage banker transaction or a mortgage broker transaction if the mortgage banker or mortgage broker:

"(a)   Transacts business as a mortgage banker or mortgage broker in violation of any provision of ORS 59.840 to 59.980; or

"(b)   Transacts business as a mortgage banker or mortgage broker by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

"(3)   The person suffering ascertainable loss may recover damages in an amount equal to the ascertainable loss."

The legislature has defined some of the terms that it used in the foregoing subsections of ORS 59.925. A person must be licensed as a mortgage banker or mortgage broker to engage in "residential mortgage transactions." ORS 59.845(1). A residential mortgage transaction is "a transaction in which a mortgage, deed of trust, purchase money

security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in property upon which four or fewer residential dwelling units are planned or situated[.]" ORS 59.840(9).

Those definitions inform our understanding as to whom the legislature intended to authorize to bring an action for misrepresentation against a mortgage banker or mortgage broker and what kind of transaction may be the basis for such an action. "[A]ny person" who suffers a loss in a certain kind of defined transaction may bring an action against a mortgage banker or mortgage broker. ORS 59.925(2). Specifically, the loss must occur in a "mortgage banker transaction" or a "mortgage broker transaction," which is a transaction in which the person handling the transaction, in order to be engaged in the business of handling such transactions, is required to be licensed as a mortgage banker or mortgage broker. ORS 59.925(1). A person is required to be licensed as a mortgage banker or mortgage broker to engage in residential mortgage transactions, ORS 59.845(1), and a residential mortgage transaction, in turn, is one that involves the creation of a security interest in residential property. ORS 59.840(9). Thus, a "mortgage banker transaction" or a "mortgage broker transaction" under ORS 59.925(1) includes, among other things, a transaction that creates a security interest in residential property.

■ Applying those critical statutory definitions, we conclude that, under ORS 59.925(2), a mortgage banker or mortgage broker is liable to any person who suffers an ascertainable loss in a residential mortgage transaction (that is, a transaction involving the creation of a security interest in residential property) if the mortgage banker or mortgage broker violates the provisions of ORS 59.840 to 59.980 or engages in misrepresentation. Put more simply, as it applies to the allegations here, ORS 59.925(2) provides that, if a mortgage broker engages in a misrepresentation in a residential mortgage transaction, then the mortgage broker is liable to any person who suffers a loss in that transaction as a result of that misrepresentation.

Our analysis of the text and context of ORS 59.925 leaves no doubt that the legislature intended persons who

loan money in a residential mortgage transaction to have a right of action under that statute against a mortgage banker or mortgage broker, and, in any event, nothing in the legislative history or the policy arguments that the parties advance is inconsistent with that analysis. The legislature's use of the passive voice in ORS 59.925(2) somewhat obscures the question of who has a right of action against a mortgage banker or mortgage broker under that section. However, when we consider the relevant definitions, as we have here, the legislative intent becomes evident. Accordingly, we find no reason to look beyond the text and context of ORS 59.925.

■       We now return to the facts of this case. The Grafs allege that they suffered a loss after a mortgage broker's misrepresentations induced them to lend funds in a residential mortgage transaction. That claim fits squarely within the text of ORS 59.925(2)(b), because the Grafs alleged a loss that occurred in a transaction that created a security interest in residential property and that was caused by a misrepresentation on the part of a mortgage broker. The Grafs thus have a right of action against Mortgage One under ORS 59.925(3). And, because they are persons who "hav[e] a right of action against a * * * mortgage broker" under ORS 59.925(3), they also have a right of action under the bond. ORS 59.925(6).[2] It follows that the contrary ruling of the trial court and decision of the Court of Appeals are in error.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[2] Our holding is limited to reversing the judgment that the trial court entered against the Grafs and that the Court of Appeals affirmed. We express no opinion as to the merits of the Grafs' misrepresentation allegations.